20-3224; 22-70
*Black v. Almodovar*; *G.M. v. Almodovar*

NARDINI, *Circuit Judge*, joined by LIVINGSTON, *Chief Judge*, SULLIVAN, PARK, MENASHI, *Circuit Judges*, dissenting from the denial of rehearing *en banc*:

The petition for rehearing in this case raises two principal issues: (i) whether and under what circumstances a noncitizen's Fifth Amendment right to due process limits the period of his immigration detention without a bond hearing under 8 U.S.C. § 1226(c) (which requires the detention of certain noncitizens on statutorily defined criminal or national security grounds during their removal proceedings); and (ii) if such a hearing is required, which party bears the burden of proof and under what standard. The panel first held that due process precludes "unreasonably prolonged detention under section 1226(c) without a bond hearing." *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024). Then, applying the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the panel held that at such a

hearing, the government must justify continued detention by clear and convincing evidence.[1] *Black*, 103 F.4th at 138.

The panel wrestled with these difficult questions with characteristic thoughtfulness. But the panel's holding on the second issue—concerning the burden allocation and evidentiary standard if a hearing does occur—causes me concern for two principal reasons.

First, in concluding that due process requires the same remedy for prolonged detention under § 1226(c) as under § 1226(a), *see Velasco Lopez v. Decker*, 978 F.3d 842, 854–56 (2d Cir. 2020), the panel opinion does not account for key differences between the two statutory provisions and how those differences impact the due process analysis. Section 1226(a) provides that in general, the Attorney General *may*, in her discretion, order the detention of any noncitizen

---

[1] The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

pending a removal decision, with regulations guaranteeing the noncitizen an initial bond hearing in the event of his detention. In contrast, § 1226(c) *mandates* the detention of a group of criminal noncitizens whom Congress has deemed to be especially troubling, and it does not, by its terms, authorize a bond hearing. Congress made this distinction based on significant evidence that criminal noncitizens posed unacceptably high risks of flight and recidivism, and with the purpose of eliminating those risks during the pendency of removal proceedings. The panel's decision to treat the two categories of detainees the same strikes me as being fundamentally at odds with that legislative choice.

But more to the point—the remedy it prescribes is not required by the Constitution. In announcing that the Due Process Clause *requires* that the burden of proof fall on the government, and that the burden can be met only by clear and convincing evidence, the panel opinion has effectively decreed that Congress has no power to set a

standard that demands more of a noncitizen who has been convicted of a qualifying crime, or who poses a national security risk. Because the panel opinion establishes a constitutional floor, it implicitly bars Congress from amending § 1226(c) to require, say, that the noncitizen bear the burden of proving by a preponderance of the evidence that he does not pose a danger to the community or a risk of flight. Nor would Congress even have leeway to place the burden on the government, but only by a preponderance of the evidence. I cannot see how the Constitution dictates such a result.

Second, and relatedly, a disjointed body of case law analyzing § 1226(a) and § 1226(c) has bubbled up through the circuits. Five Circuits have considered various due process challenges to these statutes, and their decisions diverge widely. Our Court has now decided—through the combination of the present case and *Velasco Lopez*—that under *both* statutes, prolonged detention must trigger a bond hearing in which (i) the government bears the burden, (ii) by

clear and convincing evidence.  As to § 1226(a), the First Circuit agrees

with our Court *in part* (requiring proof of dangerousness by clear and

convincing evidence, but flight risk only by a preponderance), but the

Fourth and Ninth Circuits go the other way entirely; they have held

that due process allows the burden to remain with the noncitizen.[2]

And the Third Circuit has gone with the Fourth and Ninth Circuit

with respect to § 1226(a) (leaving the burden on the noncitizen) but

with our Court on § 1226(c) (placing the burden on the government

by clear and convincing evidence).[3]  These all-over-the-map holdings

present more than the usual circuit split.  Put together, they're a

circuit splat.

 As discussed below, the Supreme Court left these

constitutional questions open in *Jennings v. Rodriguez*, 583 U.S. 281,

---

[2] *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 39–40 (1st Cir. 2021), *with Miranda v. Garland*, 34 F.4th 338, 365–66 (4th Cir. 2022), *and Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022).

[3] *Compare Borbot v. Warden, Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279–80 (3d Cir. 2018) (§ 1226(a)), *with German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (§ 1226(c)).

312 (2018). I would have granted the government's petition for rehearing *en banc*. At this point, only the Supreme Court can clean up this intercircuit incoherence.

## I.

8 U.S.C. § 1226 governs the procedures for detaining noncitizens during the pendency of their removal proceedings. Section 1226(a) establishes the default rule, providing that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Following the arrest of a noncitizen under this subsection, the government may continue to detain the noncitizen or instead release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2). If the Immigration and Customs Enforcement officer who makes the initial custody determination decides that continued detention is appropriate, the noncitizen may seek review of that decision at a bond hearing before an immigration judge ("IJ"),

and in the event of an adverse decision by the IJ, may appeal such decision to the Board of Immigration Appeals. 8 C.F.R. § 236.1(c)(8), (d)(1), (d)(3). To obtain release on bond under § 1226(a), "the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If a § 1226(a) detainee is denied bond at the initial hearing stage, he may later request a second hearing, but such a request will "be considered only upon a showing that the alien's circumstances have changed materially." *Id.* § 1003.19(e).

In contrast to § 1226(a)'s discretionary detention framework, § 1226(c) *requires* the detention of certain noncitizens who are inadmissible or deportable for having committed certain crimes or having engaged in terrorist activities, because Congress determined

that they pose a heightened bail risk as a class.[4]  This subsection

provides that "[t]he Attorney General *shall* take into custody any alien

who" is removable on any of various enumerated criminal or national

security grounds during the pendency of removal proceedings.

8 U.S.C. § 1226(c)(1) (emphasis added).  The government "*may*

release" such a noncitizen only if (1) such release is necessary for

witness protection and (2) the noncitizen "satisfies the Attorney

General that [he] will not pose a danger to the safety of other persons

or of property and is likely to appear for any scheduled proceeding."

*Id.* § 1226(c)(4) (emphasis added).  Unlike § 1226(a) detainees,

noncitizens detained under § 1226(c) have no right by statute or

regulation to an initial bond hearing.

---

[4] As noted below, after the panel's opinion was filed, § 1226(c) was amended to cover even noncitizens who have merely been charged with or arrested for, or admitted to having committed, certain crimes.  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  Because the petitioners here were detained under the prior version of § 1226(c), my analysis focuses on the statute as it existed then.

Despite the differences between these statutory schemes, the panel opinion determined that our holding in *Velasco Lopez*, 978 F.3d 842—that when a bond hearing occurs after unreasonably prolonged detention under § 1226(a), the government must justify continued detention by clear and convincing evidence—"applies with equal force" in the § 1226(c) context. *Black*, 103 F.4th at 157. I disagree.

Congressional authority is at its peak in the realm of immigration, and we therefore owe Congress's decisions over such matters considerable deference. Indeed, the Supreme Court has consistently recognized that "[o]ver no conceivable subject is the legislative power of Congress more complete" than immigration. *Reno v. Flores*, 507 U.S. 292, 305 (1993) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), which in turn was quoting *Oceanic Steam Navigation Co. v. Strahan*, 214 U.S. 320, 339 (1909)). And in recognition of that "broad power," the Court has approvingly acknowledged that "Congress regularly makes rules [for noncitizens] that would be

unacceptable if applied to citizens." *Id.* at 305–06 (internal quotation marks omitted). Accordingly, when a court evaluates what due process requires in a matter relating to immigration, "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Of course, Congress does not have carte blanche, but our task is to ascertain "the minimum procedures required by the Constitution," *Washington v. Harper*, 494 U.S. 210, 220 (1990) (internal quotation marks omitted), not to imagine what a different Congress might have done or to decide what, in *our* view, the ideal procedures would be, *see Landon*, 459 U.S. at 34–35 ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

By applying the same burden allocation and evidentiary standard for unreasonably prolonged detention under both § 1226(a) and § 1226(c), the panel failed to accord adequate weight to Congress's deliberate choice to treat detainees under each statutory provision differently.  Section 1226(c) reflects Congress's "justifiabl[e] concern[] that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers."  *Demore v. Kim*, 538 U.S. 510, 513 (2003). "Congress adopted this provision against a backdrop of wholesale failure by the [Immigration and Naturalization Service (the "INS")] to deal with increasing rates of criminal activity by aliens," and in light of "evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings."[5]  *Id.* at 518–19.  To

---

[5] For many years, the INS was the principal federal agency for immigration and border security matters.  The Homeland Security Act of 2002 disbanded the INS, effective March 1, 2003, and created three new agencies to replace its

address those failures, Congress *mandated* the detention of a specified group of criminal noncitizens, whom it deemed to be especially troubling, during the pendency of their removal proceedings. *See id.* at 521. So strong was Congress's desire to ensure the successful removal of that subset of criminal noncitizens that it did not authorize a bond hearing at any point. Under § 1226(a), on the other hand, Congress merely authorized the *discretionary* detention of any noncitizen pending a removal decision, and the implementing regulations guarantee detainees an initial bond hearing (with the possibility of additional hearings). 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. § 236.1. The reason for the discrepancy is straightforward: Congress made "no similar findings regarding dangerousness or flight risk . . . as to the class of noncitizens detained under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 36 (1st Cir. 2021). Put simply, "§§ 1226(a) and (c) apply to discrete categories of noncitizens,"

---

functions: Customs and Border Protection, Immigration and Customs Enforcement, and Citizenship and Immigration Services.

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) (internal quotation marks omitted), and Congress deliberately created distinct detention frameworks for each category.

Given the differences between § 1226(a) and § 1226(c), I disagree with the panel's conclusion that the same burden allocation and evidentiary standard ought to apply in both contexts. It is axiomatic that "[t]he constitutional sufficiency of procedures provided in any situation . . . varies with the circumstances." *Landon*, 459 U.S. at 34. "The circumstances [of detention under the two provisions at issue here] are quite different." *Hernandez-Lara*, 10 F.4th at 36. "Unlike those mandatorily detained under § 1226(c), persons subject to detention under § 1226(a) . . . include individuals with no criminal record . . . ." *Velasco Lopez*, 978 F.3d at 854; *see also Hernandez-Lara*, 10 F.4th at 36 (underscoring the same distinction). In *Velasco Lopez*, we considered this distinction to be significant to our determination "that individuals subject to prolonged detention under

§ 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing," including by "shifting the burden of proof to the Government." 978 F.3d at 854. This distinction is equally relevant to the constitutional analysis here, and it supports reaching a different conclusion as to the process required to remedy prolonged detention under § 1226(c).

Congress's finding that § 1226(c) detainees "pose a heightened bail risk as a class," *id.* at 848, supports keeping the burden of proof on the detainee. In this scenario, detainees who have been subject to unreasonably prolonged detention without a hearing would get their day in immigration court, but they would need to overcome the presumption, which underlies the statutory scheme, that "releasing [them] on bond would lead to an unacceptable rate of flight" and recidivism. *Demore*, 538 U.S. at 518–20. The panel reasoned that requiring such detainees to "prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that

14

detention is necessary—presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged." *Black*, 103 F.4th at 156; *see id.* at 155–56 (concluding that the second *Mathews* factor is dispositive of the burden allocation). But the panel fails to explain why the presumption of detention changes with the mere passage of time, which in the panel's view could be as little as six months. *See id.* at 150 ("[A]ny immigration detention exceeding six months without a bond hearing raises serious due process concerns.").

As the Supreme Court observed in *Demore*, the "detention of deportable criminal aliens *pending their removal proceedings* . . . necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." 538 U.S. at 527–28. "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require

it to employ the least burdensome means to accomplish its goal." *Id.* at 528. And it certainly does not need to employ the least burdensome means when addressing the detention of noncitizens whose criminal records implicate national security risks and other concerns. *See id.* (stating that the "evidence [regarding flight risk and recidivism among criminal noncitizens that] Congress had before it certainly supports the approach it selected"—that is, mandating detention for the class of criminal noncitizens covered by § 1226(c)).[6]

Consider the Bail Reform Act. In support of its conclusion that the government must justify continued detention by clear and convincing evidence, the panel points to the Supreme Court's observation in *United States v. Salerno*, 481 U.S. 739 (1987)—which rejected a constitutional challenge to the Bail Reform Act—that

---

[6] The Supreme Court has recognized that "reasonable presumptions and generic rules . . . are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to aliens," *Demore*, 538 U.S. at 526 (internal quotation marks omitted), particularly when, as here, the presumption is based on a record of criminal activity or activity that is deemed to present a national security threat.

"pretrial detention is permitted when the government can justify its need by clear and convincing evidence." *Black*, 103 F.4th at 158 (citing *Salerno*, 481 U.S. at 751). But that observation pertained to the Bail Reform Act's discretionary detention provision, which, like § 1226(a), applies to a broad class—any arrestee. *See* 18 U.S.C. § 3142(f)(2). Notably, the statute also singles out a subgroup of persons, not unlike § 1226(c), by creating "a rebuttable presumption" for certain arrestees (regardless of their citizenship status) that "no condition or combination of conditions will reasonably assure the safety of any other person and the community," *id.* § 3142(e)(2), or "reasonably assure the appearance of the person as required and the safety of the community," *id.* § 3142(e)(3). Arrestees face this presumption in certain circumstances if they have previously been convicted of an offense listed in 18 U.S.C. § 3142(f)(1), such as a crime of violence, or if the judge "finds that there is probable cause to believe" that they have committed an offense listed in § 3142(e)(3), such as a specified

drug crime carrying a maximum term of imprisonment of ten years or more.  *Id.* § 3142(e)(2), (e)(3), (f)(1).  In these cases, the presumption shifts from releasing the arrestee on bail, as in the typical case, to detaining him, even before the arrestee is convicted.  When the presumption applies, the defendant must "introduce some evidence . . . to rebut the presumption," and even when the "defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant."  *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).  So even in *Salerno*, where the Court considered a statute that allows for detention for risk of flight based on a preponderance of the evidence, and danger to the community based on clear and convincing evidence, due process permitted for the introduction of a presumption that significantly altered the detention calculus.  And although the *Salerno* Court had no occasion to consider it, 18 U.S.C.

§ 3143—which governs detention of a convicted defendant pending sentence or appeal—flips the burden: Detention is mandatory unless the judge finds by clear and convincing evidence *both* that the person is not likely a flight risk or danger to the community.

The Supreme Court's approval of Congress's decision to single out a certain category of persons (citizens included) for presumptive detention under the Bail Reform Act reinforces the validity of Congress's choice to do so under § 1226(c). In addressing a challenge to detention under § 1226(a), the Fourth Circuit, relying on *Salerno*, stated: "If, in the criminal context, requiring citizens to bear the burden to show that they are not a danger to the community and a flight risk is not unconstitutional, it cannot be unconstitutional for the government to place a similar burden on an alien facing removal proceedings, especially considering the detention lasts only until removal." *Miranda v. Garland*, 34 F.4th 338, 363 (4th Cir. 2022). This well-founded proposition applies with even greater force to the

removable noncitizens detained under § 1226(c), who have been convicted of a crime, even when their detention has become unreasonably prolonged.  The remedy for § 1226(c) detainees who have been subject to such detention is the bond hearing that they would otherwise be denied entirely.  *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks omitted)).  There is no constitutional basis for requiring, in addition, that the government bear the burden of proof at that hearing.  The presumption of detention need not disappear entirely.

In summary, the panel's prescribed remedy for prolonged detention under § 1226(c) exceeds what the Constitution requires.

## II.

In *Demore*, the Supreme Court rejected a facial challenge to the constitutionality of 8 U.S.C. § 1226(c).  538 U.S. 510.  More recently, in

*Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court considered a challenge asserting that §§ 1226(a) and 1226(c) do not authorize prolonged detention absent a bond hearing at which the government must prove by clear and convincing evidence that continued detention is justified.[7]  The Court resolved the case solely on statutory grounds, declining to consider the respondents' constitutional argument that prolonged detention under these provisions without a bond hearing violated their due process rights.  *Id.* at 312.  Thus, the question whether unreasonably prolonged detention under § 1226(c) may violate due process, and if so, what remedy is required, has been left to percolate through the lower courts.

The panel and several other members of this Court voted to deny rehearing in part because the only other circuit that has addressed this narrow question, regarding § 1226(c), reached the same conclusion as the panel, including with respect to the burden

---

[7] *Jennings* also involved a challenge to § 1225(b), but that provision is not at issue here.

21

allocation and evidentiary standard. That observation is correct as far as it goes. In *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 206 (3d Cir. 2020), the Third Circuit, like the panel here, held that when detention under § 1226(c) becomes unreasonably prolonged, the detainee is entitled to a bond hearing at which "the Government must justify his continued detention by clear and convincing evidence." But courts, including the panel here, have consistently analyzed § 1226(c) in relation to § 1226(a), and vice versa. *See, e.g.*, *Black*, 103 F.4th at 149 ("That *Velasco Lopez* dealt with section 1226(a) detention means only that the case is not directly binding here, not that its reasoning is irrelevant."); *id.* at 157 ("Once those detentions [under §§ 1226(a) and (c)] have been unconstitutionally prolonged, the due process analysis adopted in *Velasco Lopez* applies with equal force to both situations."). It is therefore critical to consider the broader state of the case law regarding constitutional claims arising under either provision.

Since *Jennings*, four circuits other than ours have considered whether due process requires the government to bear the burden of proof at bond hearings for noncitizens detained under § 1226(a) or § 1226(c).  In the § 1226(a) context, the First Circuit has held that even at the initial bond hearing, due process requires the government to bear the burden of proving dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *See Hernandez-Lara*, 10 F.4th at 39–40.  The Third, Fourth, and Ninth Circuits, on the other hand, have held that due process does not require shifting the burden from the noncitizen to the government in a § 1226(a) bond hearing.  *See Borbot v. Warden, Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Miranda*, 34 F.4th at 366; *Rodriguez Diaz*, 53 F.4th at 1213.  And as noted above, in the § 1226(c) context, the Third Circuit has held—in contrast to its holding in the § 1226(a) context—that the burden of proof belongs to the government.  *See German Santos*, 965 F.3d at 214.

One might argue that the § 1226(a) cases in the Third and Fourth Circuits addressed due process requirements only for the *initial* bond hearing, not for a hearing once the detention has become unreasonably prolonged. But neither circuit cabined its opinion that narrowly. In *Borbot*, which involved a habeas petitioner's request for a second bond hearing, the Third Circuit noted that the petitioner was "correct to point out that *Diop* [*v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011),] places the burden of proof on the government in § 1226(c)" bond hearings offered as a remedy for "unreasonably long" detention, "whereas under § 1226(a) the burden remains on the detainee *at all times*." 906 F.3d at 277, 279 (emphasis added). The court "perceive[d] no problem with this distinction." *Id.* at 279. In other words, the Third Circuit expressly contrasted the procedures for § 1226(c) bond hearings *in the context of unreasonably prolonged detention* with the unchanging procedures for § 1226(a) hearings.

Thus, any attempt to cabin *Borbot* to initial § 1226(a) hearings would be unpersuasive.[8]

Nor does anything in *Miranda* limit its analysis to initial § 1226(a) hearings. To the contrary, the Fourth Circuit emphasized that "aliens are due less process when facing removal hearings than an ordinary citizen would have," and that "it cannot be unconstitutional" to require "an alien facing removal proceedings" to "bear the burden to show that [he is] not a danger to the community and a flight risk." *Miranda*, 34 F.4th at 361, 363. Moreover, the court "agree[d] with the Third Circuit's view of the burden of proof

---

[8] Moreover, the Third Circuit stated that because Borbot failed to demonstrate that his detention was unreasonably prolonged, the court "need not decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing in order to conclude that [his] due process rights were not violated." *Borbot*, 906 F.3d at 280. Notably, the court limited that hypothetical to whether *a new hearing* would be required, making no mention of whether *the burden of proof would need to shift to the government* at such a hearing, despite Borbot's argument on that point. This further supports reading "at all times," *id.* at 279, to include subsequent bond hearings, even when the detention has become unreasonably prolonged.

procedures in § 1226(a)," namely, that "the alien bear[s] the burden of proof." *Id.* at 366 (citing *Borbot*, 906 F.3d at 279).

In any event, the panel places its emphasis in the wrong place. As discussed above, it is the *category of noncitizens* at issue that principally matters for our due process analysis, not the timing of the hearing along the detention continuum. *See Rodriguez Diaz*, 53 F.4th at 1201 (recognizing "that under the Supreme Court's . . . decision in *Jennings*, §§ 1226(a) and (c) apply to discrete categories of noncitizens—and *not* to different stages of a noncitizen's legal proceedings" (internal quotation marks omitted)).

This misplaced emphasis skewed the outcome of the panel's *Mathews* analysis. Congress placed its thumb on the scale in favor of detention for noncitizens covered by § 1226(c), going so far as to mandate it. Thus, in this context, as compared with the discretionary detention regime under § 1226(a), the government's interest is relatively stronger, and the detainee's relatively weaker, while the

risk of error is effectively the same.  One would expect that plugging

these different inputs into the *Mathews* test in the § 1226(c) context

would yield a different output than in the § 1226(a) context.  *See*

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[N]ot all situations

calling for procedural safeguards call for the same kind of

procedure.").  Yet the panel's reasoning produced the same outcome.

Even assuming that when the *Mathews* factors are properly weighted

in the § 1226(c) context, due process may eventually require that a

detainee receive a bond hearing, it certainly does not require shifting

the burden of proof from the detainee to the government, much less

requiring the government to justify continued detention by the

heightened standard of clear and convincing evidence.

*     *     *

In my view, the varying approaches taken by several courts of

appeals underscore why we should have granted the government's

petition for rehearing *en banc* here.  Consider the Third Circuit's

27

contrasting decisions in *Borbot* and *German Santos*. Under *Borbot*, § 1226(a) detainees bear the burden of proof even though many of them have no criminal history, much less the type of criminal record that Congress deemed to warrant mandatory detention under § 1226(c), as the First Circuit and this Court have recognized. *See Hernandez-Lara*, 10 F.4th at 36 ("Unlike section 1226(c), section 1226(a) applies to a wide swath of noncitizens, many of whom . . . have no criminal record at all."); *Velasco Lopez*, 978 F.3d at 854 (noting that "[u]nlike those mandatorily detained under § 1226(c), persons subject to detention under § 1226(a) . . . include individuals with no criminal record"). Yet under *German Santos*, § 1226(c) detainees, who by definition were convicted of particularly serious crimes such as murder or robbery or engaged in terrorist activities, face no such burden as soon as they become entitled to a hearing; instead, the government must justify their continued detention by clear and convincing evidence. This is a peculiar result, and it runs

counter to the entire statutory scheme.  Congress enacted § 1226(c) precisely because it wanted to ensure that the covered noncitizens would be detained pending their removal proceedings, absent the narrowest of circumstances, on the ground that they presented a heightened risk of danger to the community, or risk of flight, in contrast to the detainees under § 1226(a), whom Congress permitted to be released on bond at the discretion of the Attorney General. Given this statutory framework, it strikes me as profoundly wrong to make it no more difficult to obtain release at a bond hearing for § 1226(c) detainees than for § 1226(a) detainees, when detention for either has become unreasonably prolonged in the same measure.

I believe that the rule with respect to § 1226(c) hearings should be what multiple other circuits have said about § 1226(a) hearings: namely, that it is consistent with due process to require the detainee to bear the burden of proving, by a preponderance of the evidence, that he presents neither a danger to the community nor a risk of flight.

*See Miranda*, 34 F.4th at 365–66; *Rodriguez Diaz*, 53 F.4th at 1213; *see also Borbot*, 906 F.3d at 279 ("[U]nder § 1226(a) the burden remains on the detainee at all times.").  Although some judges might perhaps have drawn the line between the panel's and mine (say, placing the burden on the government, but only by a preponderance of the evidence), rehearing this case *en banc* would have given us an opportunity to grapple collectively with where to draw it.

Moreover, this case has the potential to affect a substantial number of immigration proceedings within our jurisdiction and nationwide.  In New York alone, U.S. Immigration and Customs Enforcement ("ICE") detained 4,770 noncitizens with criminal convictions during the period between October of 2020 and January of 2025; nationwide, there were over 236,000 ICE detainees with criminal convictions during that period.[9]  While the available data do

---

[9] *See ICE Enforcement and Removal Operations Statistics*, U.S. Immigr. & Customs Enf't (May 30, 2025), https://www.ice.gov/spotlight/statistics [https://perma.cc/SE2V-GBBC].

not identify the number of noncitizens detained pursuant to § 1226(c),
these figures nonetheless suggest that this decision will likely affect
many cases and carry wide-ranging implications.

It is worth noting that after the government filed its petition,
Congress amended § 1226(c) to expand the category of covered
crimes, and to require the detention not only of those who have been
convicted of any of the newly added crimes but also of anyone who
has been accused of one. *See* Laken Riley Act, Pub. L. No. 119-1,
139 Stat. 3 (2025). But it seems to me that the panel holding regarding
the burden of proof at a bond hearing remains binding as to
petitioners who fall within the scope of the pre-amendment version
of the statute; the only open question for a future panel would be
whether this holding also applies to petitioners falling within the
expanded scope. While other considerations might apply to the
amendments (say, to petitioners who have been arrested but not yet
convicted), our *en banc* Court would not have been called upon to

express a view on the revised statute because the two petitioners in this case were convicted of crimes covered by the prior version. Accordingly, I do not believe that the amendments provide support for the Court's decision to abstain from rehearing.

For all these reasons, I respectfully dissent from the denial of rehearing *en banc*.